IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MONTA COLLINS,

   Plaintiff,

   v.

EASTERN CORRECTIONAL
INSTITUTION and
SARAH JOHNSON, RN[1],

   Defendants.

Civil Action No. DKC-24-2241

## MEMORANDUM OPINION

Pending before the court are a motion to dismiss filed on behalf of Defendant Eastern Correctional Institution (ECF No. 12) and a motion to dismiss or for summary judgment filed on behalf of Defendant Sarah Johnson, RN.[2] (ECF No. 15). Plaintiff Monta Collins opposes the second motion (ECF No. 20) and moves for "full discovery" (ECF No. 21). Defendant Johnson filed a reply. (ECF No. 22). No hearing is deemed necessary as the issues have been fully briefed. *See* Local Rule 105.6 (D. Md. 2023). For the reasons set forth below, Defendant Eastern Correctional Institution's motion to dismiss is granted. Defendant Sarah Johnson's motion, construed as a motion for summary judgment, is denied, and Mr. Collins' request for discovery is denied as moot. Counsel will be appointed.

---

[1] The Clerk will be directed to amend the docket to reflect the full name of Defendant Sarah Johnson, RN.

[2] A duplicate of the motion to dismiss or for summary judgment filed by Sarah Johnson, RN is filed at ECF No. 19.

BACKGROUND

A.     Complaint Allegations

Plaintiff Monta Collins is an inmate confined at Eastern Correctional Institution. (ECF No. 1). Mr. Collins alleges that on July 5, 2024, he began to feel sick and could not keep food down. *Id.* at 4. He had been throwing up for two weeks. *Id*. He notified Defendant Sarah Johnson, RN ("Nurse Johnson") that he did not feel well, had chronic asthma, and had filled out four sick call slips but was not seen. *Id.* He also advised her that he had "passed out twice from a heat stro[ke]." *Id*.

On July 28, 2024, around noon, Nurse Johnson was conducting rounds when Mr. Collins' cellmate notified her that Mr. Collins was having a heat stroke. ECF No. 1 at 4. Mr. Collins states that he passed out in his cell and was taken to medical by correctional officers. (ECF No. 1 at 4, 5).

In the medical unit, he was evaluated by Nurse Johnson, on whom Mr. Collins had an "active ARP" because Nurse Johnson "lied an[d] said [he] was forcefully not eating an[d] making [him]self sick." (ECF No. 1 at 5). Mr. Collins states that Nurse Johnson took his "temperature"[3] and it was 149/95. *Id*. She then tried to force him to eat crackers and drink water while correctional officers showed Nurse Johnson the ARP Mr. Collins had written. *Id*. Nurse Johnson checked Mr. Collins' "temperature" again, it was 120/95, and she authorized him to return to his cell. *Id*. Mr. Collins states that he had three heat strokes while his "temperature" was elevated. *Id*. Nurse Johnson advised that she was going to "get it lower than 100 over 95 not to help but to alter it for

---

[3] While Mr. Collins says Nurse Johnson took his temperature, the numbers he provides would suggest she took his blood pressure.

her paperwork." *Id*. at 5. Nurse Johnson accused Mr. Collins of "trying to not keep food down" because he wanted to go to the emergency room. *Id*. at 4.

Mr. Collins asserts that Nurse Johnson violated his rights, including his Fifteenth Amendment rights, and her conduct constituted cruel and unusual punishment. (ECF No. 1 at 4, 5). He seeks unspecified legal help and compensatory damages. *Id*. at 6.

B.   Defendants' Motions

   1.   Eastern Correctional Institution

Eastern Correctional Institution moves to dismiss, arguing that it is entitled to Eleventh Amendment immunity and is not a person amenable to suit under 42 U.S.C. § 1983. (ECF No. 12).

   2.   Nurse Johnson

Nurse Johnson, in her declaration accompanying the motion to dismiss or for summary judgment, denies ever ignoring Mr. Collins' medical needs or ever seeing him have a heat stroke or other heat-related illness. (ECF No. 19-1, ¶ 14). She explains that his medical records show that he complained of asthma due to the heat and was provided with an inhaler. *Id.*

She also asserts that there are no medical records between February 8, 2024, when Mr. Collins refused lab work, and July 12, 2024, when Nurse Johnson triaged Mr. Collins' sick call. (ECF No. 15-2; ECF No. 19-1, ¶ 8). Further, according to Defendants, Mr. Collins' medical records demonstrate that the only sick calls he submitted during the relevant time were triaged on July 12 and July 25, 2024. (ECF No. 19-1, ¶ 5; ECF No. 15-2 at 21-22). There is no evidence that Mr. Collins submitted four sick calls regarding heat stroke or inability to breathe prior to July 5, 2024, as he claims. (ECF No. 19-1, ¶ 5). Additionally, Nurse Johnson avers that she does not

recall Mr. Collins telling her on July 5, 2024, that he was sick and unable to keep food down and there are no records documenting an encounter that day. *Id*.

According to the medical record, in the sick call triaged on July 12, 2024, Mr. Collins stated that he was having difficulty breathing due to the heat, was vomiting, and requested a fan. (ECF No. 15-2 at 21). Mr. Collins did not date this sick call, but Nurse Johnson avers that she triaged it on July 12, 2024, as shown in the upper right-hand corner of the form. (ECF No. 19-1, ¶ 8). She wrote, "No fans" after a later visit with Mr. Collins on September 1, 2024, because the medical department does not provide fans. *Id.*

In the July 25, 2024, sick call, he complained that the heat and lack of air flow was exacerbating his chronic asthma. (ECF No. 15-2 at 22). He requested a fan or albuterol inhaler and stated that his chest hurt since the end of May and this occurred every summer. *Id*. On July 28, 2024, Nurse Johnson triaged this sick call. *Id*. She explains that she saw Mr. Collins in response to this sick call but does not recall the exact date or time and the encounter was apparently not documented. (ECF No. 19-1, ¶ 8). Nurse Johnson points to the checkmark on the sick call slip on July 28, 2024, at 4:00 p.m. acknowledging Mr. Collins' vital signs and lung sounds were within normal limits as evidence of their encounter. *Id*. She avers that Mr. Collins did not have signs or symptoms of a heat stroke when she saw him. *Id*. Nurse Johnson also states that she does not remember Mr. Collins' cellmate stopping her during medication pass on July 28, 2024, and advising her that Mr. Collins was having a heat stroke. *Id.*, ¶ 5. Nurse Johnson explains that her medication pass is at 8 a.m., not noon when Mr. Collins' alleges his cellmate stopped her. *Id*.

On July 30, 2024, RN Adrion evaluated Mr. Collins due to his complaints that the heat was causing him to have difficulty breathing. (ECF No. 15-2 at 10-13). It was noted that his mother had called and reported that he was having difficulty breathing but that he had not reported this

4

issue to custody or medical staff. *Id*. at 13. Mr. Collins reported that he was not drinking water from the sink but was only drinking the ice that is handed out twice a day. He stated that he had just gotten ice and felt better and advised that he had received an inhaler the day before. *Id*. His blood pressure was 122/72. *Id*. at 10. His temperature was 99, pulse 115, and pulse ox 98. *Id*. He was not in distress, respiratory or otherwise, although wheezing bilaterally was observed. *Id*. at 11. The physician was contacted for orders and Mr. Collins was provided albuterol, given six cups of cold water, encouraged to increase his water intake, including drinking from the sink or buying water from the commissary. He was scheduled to see the provider and advised to return to sick call if his symptoms did not improve. *Id*. at 12-13.

On July 31, 2024, Dr. Matera entered a note that Mr. Collins' prescription for his albuterol inhaler be changed to keep on person ("KOP"). (ECF No. 15-2 at 8-9).

Dr. Matera evaluated Mr. Collins on August 14, 2024. (ECF No. 15-2 at 5-7). At that time, Mr. Collins complained of a sore chest well and was assessed as having a contusion on his thorax: he was provided Motrin. He had an active prescription for an albuterol inhaler to treat his asthma. *Id*. at 7.

On September 1, 2024, Mr. Collins was seen by Nurse Johnson for a nurse visit due to his complaint of difficulty breathing. (ECF No. 15-2 at 3, 21). It was noted that he had a history of asthma and that he was provided an inhaler. It was also noted that fans could not be provided by medical. *Id*.

Nurse Johnson avers that she has never falsified a patient's medical record. (ECF No. 19-1, ¶ 7). She further avers that she never saw Mr. Collins while he was having a heat stroke and there is no record that he had a heat stroke from January 1, 2024, through September 18, 2024. *Id*. Heat stroke is a medical emergency and signs include: body temperature of 103 or higher, dry skin,

rapid pulse, headache, confusion, nausea, vomiting, dizziness, slurred speech, and loss of consciousness. *Id*. If a patient were suffering heat stroke, Nurse Johnson explains that she would immediately notify a provider so that the patient could be sent to the hospital. *Id*.

Nurse Johnson explains that Mr. Collins' allegation that she took his temperature and it was 145/95 cannot be true because that is a blood pressure reading and not a temperature reading. *Id*. She explains that a normal blood pressure reading for most patients is less than 120/80 and that a person "having a heat stroke would likely have dangerously low blood pressure due to fluid loss, and not high blood pressure." *Id*.

C.    Mr. Collins' Opposition

In his opposition response, which is accompanied by his own declaration, Mr. Collins states that, although he was unconscious, he believes that video would show that on July 28, 2024, between 8:00 a.m. and 10:00 a.m. his cellmate notified Nurse Johnson that he suffered a heat stroke and that he was carried to the medical room. (ECF No. 20 at 2). He claims that video evidence would show that he regained consciousness in the medical room with his vital signs being checked by Nurse Johnson. *Id*. Contrary to his Complaint allegations, he claims, for the first time, that he had a temperature of 110 and blood pressure of 122/72, but Nurse Johnson forced him back to his cell. *Id*. at 3.

Mr. Collins reiterates his claim that he filed his first sick call on July 5, 2024, complaining that due to excessive heat over an extended period of time his body temperature had risen and he was having shortness of breath, vomiting, and dizziness. (ECF No. 20-1 at 2). He also states that to best of his knowledge and belief, while he was unconscious, his cellmate notified Nurse Johnson that he was experiencing a heat stroke. *Id*.

6

He reiterates that he filed a sick call on July 25, 2024, complaining of difficulty breathing due to lack of air flow and heat. (ECF No. 20-1 at 2). Despite alerting Nurse Johnson to these issues, he received no response. *Id.* On July 28, 2024, Mr. Collins submitted another sick call and was taken to medical to be evaluated by Nurse Johnson who, he claims, did not check his vitals as she asserts. *Id.* at 3.

## STANDARD OF REVIEW

In reviewing the complaint in light of a motion to dismiss pursuant to Fed. R. Civ. Proc. 12(b)(6), the court accepts all well-pleaded allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)); *Ibarra v. United States,* 120 F.3d 472, 473 (4th Cir. 1997). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002) (stating that a complaint need only satisfy the "simplified pleading standard" of Rule 8(a)).

The Supreme Court of the United States explained that a "plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Nonetheless, the complaint does not need "detailed factual allegations" to survive a motion to dismiss. *Id.* at 555. Instead, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 563. To survive a motion to dismiss, "a complaint must

7

contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Nurse Johnson's dispositive motion is also filed in the alternative as a motion for summary judgment. Pursuant to Fed. R. Civ. P. 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion: "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002). The court must, however, also abide

by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

Summary judgment is generally inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont De Nemours and Co. v. Kolon Industries, Inc.*, 637 F.3d 435, 448-49 (4th Cir. 2012); *see Shaw v. Foreman*, 59 F.4th 121, 128 (4th Cir. 2023); *Putney v. Likin*, 656 F. App'x 632, 638-39 (4th Cir. 2016) (per curiam); *McCray v. Maryland Dep't of Transportation*, 741 F.3d 480, 483 (4th Cir. 2015). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)).

## ANALYSIS

A.   Eleventh Amendment Immunity: Eastern Correctional Institution

Eastern Correctional Institution asserts that it is immune from claims against it under the Eleventh Amendment. Under the Eleventh Amendment to the United States Constitution, a state, its agencies, and its departments are immune from suits in federal court brought by its citizens or the citizens of another state unless the state consents. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). While the State of Maryland has waived its sovereign immunity for certain types of cases brought in state courts, *see* Md. Code Ann., State Gov't § 12-202(a), it has not waived its immunity under the Eleventh Amendment to suit in federal court. As

-
-
-

such, Eastern Correctional Institution, an agency of the State of Maryland, is immune from suit and the complaint filed against it must be dismissed.[4]

      B.      Eighth Amendment:  Nurse Sarah Johnson

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976); *see also Hope v. Pelzer*, 536 U.S. 730, 737 (2002); *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016).  "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)); *accord Anderson v. Kingsley*, 877 F.3d 539, 543 (4th Cir. 2017).  To state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants, or their failure to act, amounted to deliberate indifference to a serious medical need.  *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also Anderson*, 877 F.3d at 543.

Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed either to provide it or ensure it was available. *See Farmer v. Brennan*, 511 U.S. 825, 834-7 (1994); *see also Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 209-10 (4th Cir. 2017); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016); *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008).  Objectively, the medical condition at issue must be serious.  *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care); *Jackson v. Lightsey*, 775 F.3d

---

[4] The court need not address Eastern Correctional Institution's additional defenses.

170, 178 (4th Cir. 2014). "A 'serious medical need' is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 210 (4th Cir. 2017) (quoting *Iko*, 535 F.3d at 241); *see also Scinto v. Stansberry*, 841 F.3d 219, 228 (4th Cir. 2016) (failure to provide diabetic inmate with insulin where physician acknowledged it was required is evidence of objectively serious medical need).

After a serious medical need is established, a successful Eighth Amendment claim requires proof that the defendants were subjectively reckless in treating or failing to treat the serious medical condition. *See Farmer*, 511 U.S. at 839-40. Under this standard, "the prison official must have both 'subjectively recognized a substantial risk of harm' and 'subjectively recognized that his[/her] actions were inappropriate in light of that risk.'" *Anderson v. Kingsley*, 877 F.3d 539, 545 (4th Cir. 2017) (quoting *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004)); *see also Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997) ("True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk."). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844). The subjective knowledge requirement can be met through direct evidence of actual knowledge or through circumstantial evidence tending to establish such knowledge, including evidence "that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Scinto*, 841 F.3d at 226 (quoting *Farmer*, 511 U.S. at 842).

Mr. Collins asserts that he suffered a "heat stroke." There is no medical support at present for that assertion. While medical records during the relevant time period demonstrate that he suffered exacerbation of his asthma and complained of heat causing him to feel dizzy and to vomit, the objective evidence shows that his vital signs were normal, other than elevated blood pressure, which Nurse Johnson explains would not be indicative of heat stroke.

It is possible for Mr. Collins to demonstrate that he suffered from an objectively serious medical need even without showing heat stroke. At that point, the evidence that Nurse Johnson disregarded that need or was otherwise deliberately indifferent to that need is in conflict.

Mr. Collins claims that he told Nurse Johnson on July 5, 2024, that he did not feel good, was unable to keep food down, had passed out twice from a heat stroke, and had filled out four sick calls but had not been seen, but Nurse Johnson does not recall this encounter. The medical records show that the only sick calls filed by Mr. Collins were triaged on July 12 and July 28, 2024. As to the alleged July 28, 2024, encounter, Nurse Johnson did see Mr. Collins after he submitted a sick call on July 25, 2024. His vital signs and lung sounds were within normal limits and Nurse Johnson avers that Mr. Collins did not have signs or symptoms of a heat stroke when she evaluated him. In his Complaint, Mr. Collins explains that when Nurse Johnson evaluated him on July 28, she gave him crackers and water, monitored him, and only released him back to his housing unit after she had taken his blood pressure a number of times and it had lowered significantly. (ECF No. 1 at 5). She provided nursing care by giving him food and water, monitoring his condition, and checking his vital signs. Mr. Collins contends that he should not have been returned to his cell because his "temperature was not yet okay."

Mr. Collins claims that Nurse Johnson failed to take his vital signs but in his Complaint asserts that his "temperature" was taken on a number of occasions before he was returned to his

cell and provides what appear to be blood pressure readings. And, in his opposition response, he states that Nurse Johnson did not take his vital signs but also claims his temperature was 110. On the other hand, the medical records show that his vital signs were checked and were normal and Nurse Johnson avers that whenever she encountered Mr. Collins, he was not suffering from a heat stroke.

When RN Adrion evaluated Mr. Collins two days later, he was alert and oriented and not in distress. RN Adrion noted that Mr. Collins had not reported to medical or custody that he had difficulty breathing. Nevertheless, he was provided an inhaler and encouraged to drink water, since he had denied drinking water from the sink.

The record, thus, does not show, as a matter of law, that Nurse Johnson is entitled to summary judgment.

## CONCLUSION

Defendant Eastern Correctional Institution's Motion to Dismiss is granted. Defendant Sarah Johnson's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, construed as a motion for summary judgment, is DENIED. Mr. Collins' request for discovery is denied as moot. Counsel will be appointed. A separate Order follows.

<u>July 14, 2025</u>　　　　　　　　　　　　　　　　　　　　/s/
Date　　　　　　　　　　　　　　　　　　　DEBORAH K. CHASANOW
　　　　　　　　　　　　　　　　　　　　　United States District Judge